Good morning, ladies and gentlemen. Our first case up today is Cheryl Wright v. The Board of Trustees of the State University's Retirement System for the Appellant, Gene Turk, and for the Appellee, Michael Weinstein. All right. Mr. Turk, you may proceed. Good morning. I'm Gene Turk for the Appellate Counsel's Court. As I was discussing with counsel just now, this case really boils down to what does the word payable mean? Does it mean the earliest possible date that the person could have been paid for the benefits, or does it mean the day that the person was paid for the benefits or the person was due to be paid for the benefits pursuant to the terms of the settlement contract or pursuant to the terms of the award? As I've stated in my brief, I think logic dictates it should be the date that the contract states that the benefits or the award is payable. That is the date when the state, in this case, has agreed that the award should be paid. And after that point, if the state refuses to pay, or in other cases where a private party or private employer has refused to pay, then we have to go into the circuit court or the court of claims to make them pay. But at the date that the contract says the award is payable or to be paid, that is the meaning of the word payable. But counsel, what about the fact that the offset talks about award payable during the same period of time? I mean, are we just focusing on the word payable, or do we need to look at the entire statutory language? We're looking at the entire statutory language. When those benefits were payable is the first place to look. In this case, there's no question that the benefits were payable beginning December 23, 2006, and they paid them clear up until February of 2011. They were payable during that period of time. Then we look at when our benefits were payable from the workers' comp. At some cases, I've handled lots and lots of workers' comp cases, and I don't want to testify, but at some cases we lose and we never get paid, even though I thought we should have been paid. So if we don't get paid, it's not payable. So in this case, the benefits were payable when the parties entered into the agreement and stated that the benefits were to be paid 180 days from the date that the contract was approved. And they relate to a specific time period that you assert your client was eligible, correct? They relate to a certain time period. Well, my client is eligible for whatever… I guess if you look at it from a fiction, where they say it's 75 weeks or it's 40 weeks, in that kind of a fiction, they say it's payable for a period of 45 weeks or 75 weeks, but it's a lump sum. And in this case, it was a lump sum, so it's not a period of time for which she's going to be paid. Because she didn't get paid back in 2007 when they sort of said that the PPD was approved or accruing. She got paid in 2011. Mr. Turk, can I ask you a couple of technical questions? Yes. Okay. I noticed in the workers' comp orders, the beginning benefit was 1791, or maybe this was her disability pension, was 1791.93. But in February of 2011, the amount that they withheld as a set-off was 1687.96. Do you know why those two numbers are different? I think my counsel would know better about that, but my understanding is the benefits for disability and reserves change. The benefit rates change over time. Okay. So they fluctuate. They don't stay at whatever the initial benefit might have been. It can either go up or down. I've always seen them go up. This one was less later. So that's one question I had. Then the other question I had, it looked to me like the claims panel's decision, and maybe I can ask counsel if you don't know the answer to this either, indicated that the PPD benefit period ended 2-28-11, but the decision from workers' comp showed May 2010. So that was the other question I had. The decision from workers' comp? Well, yeah, let me find it. Maybe it's when you figure out the 168.5 weeks from the starting date comes to May 2010. I think what they're looking at is when the contract was signed on a certain date, and then it was approved by the arbitrator on a different date, and then 180 days after that date is when the benefits were payable. Right. So there's three different dates there. And then, of course, there's the dates that the claims panel calculated for when the 168 weeks was supposed to begin and when it was supposed to end. The claims panel was, as noted by counsel in the brief, the claims panel was incorrectly said that the benefits started in February 2007, and the CSRS benefits started in December 2006. There were quite a few mistakes in my opinion. I mean, even the workers' comp settlement contract lump sum petition and order indicated she was getting a total of 158.5 weeks. Right. And everybody in their briefs, and if you look at the calculation, it's 168.5. Everybody agrees on that. So, I don't know, this was a little confusing on these technical points to me. Sometimes. Yeah, I agree. Did the claims panel find that the claimant received duplicate payments of both CSRS disability benefits and Illinois workers' compensation permanent partial disability benefits covering the same dates, February 2007 through February 2009? Did they find that? Yes. Yes. Was that incorrect? Yes. Why? Because if you look at the statute, it's when those benefits from workers' comp are payable. That is, when was she supposed to be paid her benefits according to the lump sum settlement agreement which was approved by the arbitrator? Did she, whenever the actual sums were paid to her, did she receive duplicate benefits over the course of some years for the same circumstances she was in? Yes. Isn't the whole purpose of the statutory scheme to ensure that there will only be one set of disability benefits, either if you get workers' compensation fine or you get CSRS fine? Isn't that what the scheme is? That's what the courts have said the scheme is, and that's what... Is that decision wrong? No, it's correct, but all the previous cases have talked about the sources of the benefits and the source of the workers' comp and all that. What we're talking about in this case is the time and the time that the benefits were payable. Well, why does that matter if she received duplicate benefits? Because we're going by the language of the statute, and we have to look exactly at the language of the statute and not have the courts say, okay, we're going to try to implement the decision, what we think that the legislature says, so we're going to just make up some more rules about CSRS. If there's ambiguity in the statute, we should interpret it so as to achieve the result that despite the goal of avoiding duplicate payments, she's going to get duplicate payments. The statute says she's not supposed to get duplicate payments during a certain time period. You mean you think the legislature said, we don't want to give someone a claim in duplicate payments, but only during certain time periods. We don't care about giving a duplicate payment generally. That's what they said in the statute. You think that's what the legislature meant, and that's how we should interpret the statute? Maybe that's not what they intended to do, but that's what they did. I mean, the legislature does strange things, and I can't... Well, here's my question, counsel, and it seems to me at best, your argument is the statute's ambiguous about how this should all work, and we should have this strict reading of the statute so that your client would be the beneficiary of essentially duplicate payments here. I don't understand to the extent that there is ambiguity in the statute why we should interpret in a fashion that would seem to achieve a result which is contrary to what the purpose of the statute is. The courts are not in the business of changing the statute in order to achieve a result that the courts think that the legislature intended. The best reflection of what the legislature... You're right, but the term payable... Right. Just says it's payable, and that's where the ambiguity seems to arise, and you're saying we should construe it in a fashion to make sure your client gets duplicate benefits. I don't understand why we should do that. In this case, we need to look at this case. I'm not saying all the clients from now on are going to do this. My client didn't want the delay in the money. If the state said we're going to not pay you... First of all, the agency wouldn't put her back to work, so she's sitting there with nothing except for disability payments. She wants to go back to work. She can't go back to work, but the state won't put her back to work, so she's sitting there for four years not getting to go back to work. That's sad, but is any of that involved in our determination now of the issue before us? Let's say she's gone back to work on the day that she no longer received TDD, and then she wouldn't be getting any more disability payments, because they would cut off because she's working at that point in February of 2007. Then she gets her $71,000 workers' comp award later on. Well, she's been working, she's been earning money, and then she gets this award for being injured that she's entitled to. That shouldn't be duplicated. You don't call that duplicate effort or duplicate award for working and getting that award. So it's not her fault in that sense that she had to wait five years to get paid finally, during which time she received these other benefits. But the statute specifically provides that if you're getting disability for an injury or whatever happens to you, and you later receive an award for workers' comp for that same injury, the pension code statute says the state gets an offset, or the pension system gets the offset. No, I don't think that's correct. I don't think you have to get the award for the same injury. You have to get the award for the same time period. It could be a different injury, which is what other cases have held. It's not the injury, it's the time period. But in this case, it was the same injury, right? In this case, it was the same injury. We're not saying that. It was both knees and her ankles, and she had all sorts of problems. But my position is that we need to look at the language of the statute, and it says payable. And so payable means the day that she was paid or should have been paid that, according to what the commission decided, which in this case was reflected by that long-sum settlement. Thank you. Thank you, Counsel. Mr. Weinstein, can I ask you a question before you get started? Yes, ma'am. Maybe you want to state who you are for the record. I'm sorry. My name is Michael Weinstein. I'm the general counsel for the State University's retirement system. For purposes of this lawsuit, I've been appointed a special assistant attorney general. May it please the Court. Do you have a question, Justice Cope? Yes. I'm trying to figure out the claims panel decision on page 2 towards the bottom. It says, under the circumstances, it's apparent the claimant did receive duplicate payments of both CSRS disability benefits and Illinois workers' comp permanent partial disability benefits covering the same dates, i.e., February 24th, 2007 through February 28th, 2011. Is that an error when they put those dates in? That's an error. I point out, I believe in my brief at page 7. I'm sorry, at page 4. You just agree that it's an error. The date's wrong. The date the offset began was earlier in the month of February, February 2007. But what about the ending date? And the ending date was in 2011. And the reason it ended is because Ms. Wright retired. And once you retire, that stops the offset from CSRS' standpoint. In other words, the offset only goes towards disability benefits. But once an individual retires, you do not continue offsetting against the retirement benefits. Okay. All right. I think Justice Steigman's hit the nail on the head in this case. The argument that the plaintiff makes obviously leads to an absurd result. It would have the plaintiff receiving a double recovery of service benefits and workers' compensation benefits for the same injuries during the same period of time. The plaintiff does not dispute the fact that she received service disability benefits and workers' disability benefits for the same injuries in the same period of time. She does not dispute the amount of the overpayment. So what we're left with is what does the word payable mean? And I would suggest to your honors that payable can also be defined as capable of being paid. So, for example, the statute could be read as follows. In determining the monthly benefits that can be paid under this article, a deduction shall be made equivalent to any benefits that can be paid to any employee under any state or federal workers' compensation or occupational diseases acts for any period of time for which disability benefits can be paid. As opposed to paid now. As opposed to paid now, yes. I think the best example of how this would lead to an absurd result is, and I'm not suggesting at all that the plaintiff was in this situation, but an individual could simply delay the resolution of their workers' comp claim for a long enough period of time so that they don't receive their ultimate disability payment from workers' comp until after the service disability benefits have ended. For example, the individual retires in between. And then there's no offset. That simply can't be what the legislature intended. The legislature intended that there not be a double recovery. Let me explain it this way. Mr. Turk mentioned something about some unfortunate circumstances regarding the timing in this particular case. I'm not sure those circumstances are relevant to our resolution, but nonetheless, I'm curious what your assessment was with regard to the situation as he described it. Well, Your Honor, I don't know the reasons why it took the workers' compensation case to be delayed. Certainly with respect to the final six-month period of time where the state writes into these contracts that you're going to be paid X, but it's going to be paid six months later, apparently that's been going on for many, many years. And CSRS can't do anything about that. But again, the real question is, did Ms. Wright, did the plaintiff receive disability benefits for the same injuries during the same period of time for which those workers' compensation benefits are ultimately paid? And I think the answer is clearly yes. Let me mention one other point not mentioned by the plaintiff. There is a dispute about the standard of review in this case. We believe that the manifesto of the evidence is the appropriate standard of review, and we discussed it at pages 8 and 9 of our brief. But I did want to point out that in the plaintiff's brief, the plaintiff states, this court must first determine what time period applies to the offset, and then the court must calculate the offset amount. Those are clearly factual questions, and clearly the manifesto of the evidence standard is the appropriate standard. Unless there are any questions? I'm not sure I understand your argument on why the determination of what payable means isn't de novo. Your Honor, I'm suggesting that one definition of the word payable is capable of being paid, and so I then read you the applicable statute substituting the words that that can be. No, I'm sorry. I don't think I'm being clear on my question. On this standard of review issue only, it seems to me that you are arguing to us, as Mr. Turk did, a matter of statutory interpretation, which strikes me as the quintessential de novo review. I'm only arguing it in response to the argument that the plaintiff made. I believe that, in fact, the applicable standard is manifestly because, actually in this case, the court must determine what time period we're talking about and then calculating the offset amount. That was how I set forth the argument in my brief, and that really is my argument. Are those facts in dispute? Are the facts in dispute? I thought all the facts before us were in dispute. I would suggest the facts are not in dispute, and I would suggest that for those reasons the claims panel and the executive committee of CSRS and the trial court all got it right. Why, if we don't have any facts, any disputed facts before us, and if the question is what does the term payable mean, I don't understand your argument that this is a manifestly standard of review. Again, I'm suggesting that what really this court needs to determine is, again, the time period that we're talking about, a factual question, and then what the amount of payable is. Is that in dispute? Is there a dispute in this record about what, when, and where? I think the plaintiff argues that the time period is in dispute. I think the plaintiff is arguing that the offset applies to time. No, I don't understand the plaintiff to be arguing any factual dispute. I understand his argument to be what they mean. I mean, he's not claiming a different time than you as to when Ms. Wright was working, is he? No, but I think he's saying that the payment was not made until date X, and because that date X is outside or at the very end of the time period that disability benefits were being offset, that that date X is the date that we use. But you don't disagree with that. Date X is the date she got it paid. Everybody agrees with that. Is there a dispute as to when she was paid? As to when she was paid? No, there's no dispute. So the dispute is only, what does it mean? Well, okay. Thank you. Did I understand you correctly, Mr. Weinstein, to say that let's say it takes a long time to get your worker's comp claim through the process, which I think is a pretty lengthy process. Your client, or Mr. Turk's client, was disabled on whatever date. Let's say December of 2006, just for the sake. I don't know if that's correct or not. Okay, so December of 2006, she becomes disabled. She applies for disability, and she starts to collect it. Simultaneously, she's trying to go through the process of worker's comp. She gets enough years during that process where she can actually retire, and she hasn't gotten her worker's comp award yet. Are you telling us that if she retires and then gets her worker's comp award, the state never recoups anything, even though that award is for this period back then? I'm telling you under the plaintiff's argument, that's what would happen. Okay. What happens in real life. I think that's an absurd result. So in real life, even if you retired, and then you got your award, but it was for this period back here when you started the whole process? It says the period that was before the retirement was effective. Okay. Against her, what, she's taking it in retirement? No, no, no. Against her disability. Against the disability benefits that she received. What if she's not collecting them anymore? Oh, you just get a judgment against her, basically. I get it. Okay, never mind. Going back to the question, just to go back to the issue to begin with, is it correct that the CSRS panel miscalculated this appropriate date? The CSRS panel, that was the first question. So on page 13 of our brief, we say that the claims panel erroneously stated that the disability benefits began on February 27, 2007. In fact, February 27, 2007 is the date on which the offset began, not the date that her disability benefits from CSRS began. She actually started receiving disability benefits from CSRS about six months before that, I believe, in 2006. Can I ask you one more time because I'm not sure I'm clear on this? In the claims panel decision where they say CSRS disability benefits and workers' comp benefits overlapped for the same period of time, February 24, 2007 through February 28, 2011, I guess my point, my understanding was her actual workers' comp weeks, if you calculated them from the start date and go 168.5 weeks out, you come to May of 2010. And they're saying the overlap is through February 28, 2011. That's a very interesting question that I can't answer, Your Honor. I know that the 2011 date was the date that she retired, and that was always my understanding as to when her disability benefits ended from CSRS. Right, but then they're throwing in there that the Illinois workers' comp covered those same dates, and I don't think that's correct. Because if you do the 168.5 weeks from... From 2007? Yeah, you end up in May 2010. Does that affect anything? No, it would not affect anything, because we're only talking about the 168 weeks or the 38 months, I think, that we're talking about. That's the only offset period, the 38 months, the 168 weeks, that she received CSRS disability benefits and also receives a workers' compensation award. Well, the reason I ask that, sometimes there are advantages and sometimes there are disadvantages to having back-to-back oral arguments before this court, Counsel, and you have the 10 o'clock case, and we have all kinds of issues regarding CSRS calculations and assessments there, too. You do your part. You know, the phrase, close enough for government work ought to really be a joke and ought not be a standard operating procedure. And I'm wondering what's going on with this operation, and people ought to be able to rely upon what they hear and what they get from CSRS. It's supposed to be a professional organization here, and I guess we're getting a little advanced into the next case, but we have the same thing going on here, where, you know, dates and figures and everything just kind of get thrown around. Your Honor, I would suggest that in this case, the dates and figures are the dates and figures that the claims panel came up with, and in the case that you're about to hear, we're talking about figures that were actually generated by CSRS staff. Should that give me solace in my concerns, Counsel? I would suggest that... As to which hat within CSRS is responsible for... I would suggest that the error in this case is a very minor error that doesn't affect the outcome of the case. I leave it to my associate, who's going to be arguing the second case, to discuss that. Fair enough. Thank you. Thank you, Counsel. Mr. Turk, do you have a rebuttal? Yes, I do. First, I'd like to go back and say, I think that I requested the wrong relief. I think the proper procedure is to remand to the claims panel for recalculation, and not for this Court to make its own calculation. And one of the reasons I say that is that, in preparing for our argument, I did a quick research or search of any recent cases, and it was a recent case that this Court decided last month, which it's in Rule 23, so I don't want to cite it as precedent, but it does state in that they remand back to the claims panel for recalculation. Also in that case, it talks very precisely, it quotes the precedent on how we determine legislative intent. And the best way to interpret legislative intent is to look at the plain language of the statute, and that, in that case, the claimant was trying to ask the Court to make an exception, and the Court said, we don't make exceptions, limitations, or conditions that conflict with the plain language of the statute. Well, that's true, but what about Mr. Weinstein's argument that payable can be paid? As a matter of fact, in English's, my mother tongue, to use the phrase that we talk about, isn't he right that in common parlance, the term payable can mean, can be paid? When you look up in Black's, when I looked up in Black's Law Dictionary, payable said, as an invoice, when it's sent out to be paid. It's to be paid in 30 days, and when that invoice is sent, when is that amount due to be paid? That's when it's payable, when it's been agreed that it's owed, and that it's due to be paid. That's when it's payable. Not before, when the work is being done, but when the invoice is sent, and it says in there, this amount is payable, or to be paid on such and such a date. This lump sum settlement agreement, approved by the arbitrator, says this award is to be paid on a certain date. That's when it's payable. If it's not paid on that date, I have to go to court and get it enforced. The state doesn't necessarily have to pay it, and I've had cases where employers haven't paid it, and I've had to go to court to get it, but it's payable on the date it says it's to be paid. Not on some date when she finally had her last TTD check. That's not the date that anything is payable. It's when the agreement says it's to be paid, and the arbitrator has approved the contract. The case that I cited in my brief talks about when TTD is payable. It's payable when the arbitrator says it's payable. When the arbitrator says this is what should be paid It's not on some date that it's talked about in these other cases, or that the service talks about what is approved. And those cases I don't think, when I've read them, they don't even talk about approval as far as when TTD is approved. So, going back to that. The benefits that my client received were paid and payable to her during a specific time period. It was from December 23rd, 2006 to February 23rd, 2007, which I overlooked, and I think the claims panel might have overlooked. That's the first period where she was paid double. They were payable during the same time period. And then again, when the arbitrator approves that contract and it's stated it's going to be paid six months later, which always gives the state a breathing room to come up with the money to pay it. And then, that's when it's payable. That time period, and then to February 2011. Thank you. Thank you, counsel. The clerk will be in recess until the next case.